UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAI STEPHEN ROSE,<br><br>Plaintiff,<br><br>v.<br><br>FORTUNA POLICE DEPARTMENT, et al.,<br><br>Defendants. | Case No. 3:17-cv-01018-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 17 |

**INTRODUCTION**

Police officer David Erler seeks summary judgment because he had probable cause to arrest pro se plaintiff Sai Rose, who brought this civil rights action "alleging excessive force by a police officer during an unlawful arrest." Given the probable cause standard for arrest and the inclusion of "delay" in the relevant penal code section, Officer Erler did not violate the Fourth Amendment when he arrested Mr. Rose for delaying an officer in the discharge of his duties after he repeatedly asked Mr. Rose to leave a public park with his service animal, an American Bully, because of the potential risks to public safety caused by having a dog present during a city-sponsored fireworks display. Mr. Rose's unlawful arrest claim fails. His excessive force claim meets the same fate because he failed to offer any evidence of injury, and, even ignoring that omission, the minimal use of force Officer Erler exerted in handcuffing Mr. Rose was not excessive as a matter of law. And even if he lacked probable cause for an arrest, Officer Erler is entitled to qualified immunity because there is no clearly established law putting officers on notice that individuals are permitted to have service animals present during fireworks displays where dogs were not allowed for reasons of public safety. I grant defendants' motion, and judgment will

be entered accordingly.[1]

## BACKGROUND[2]

### I. FACTUAL BACKGROUND

On July 3, 2016, the City of Fortuna held an Independence Day Celebration with a fireworks display at a city park (Newburg Park). Dobberstein Decl. ¶ 2. Approximately 2,000 people attended the event. Dobberstein Decl. ¶ 3. The City organizers placed a ban on dogs for the event because of a concern that fireworks could cause a dog to react and harm someone. Dobberstein Decl. ¶ 3. Signs were posted in the park to advise attendees that dogs were not permitted. Dobberstein Decl. ¶ 4.

Mr. Rose attended the event with his 70-year-old mother, 7-year-old daughter, and his approximately 50 pound "psychiatric service animal." Rose Dep. at 49:12–24; *id.* at 57:8–16; Opp'n ¶¶ 7, 9. He refers to his service animal, "Sugar," as a pure breed American Bully.[3] Opp'n ¶¶ 5, 7; Rose Dep. at 49:15–16; *see* Photo of Mr. Rose's service animal (Mitchell Decl., Ex. A). He asserts that the only sign placed at the main entrance stated, "Dogs must be on a leash." Opp'n ¶ 3. He further contends that "other 'dogs' were observed at the park on the same day at the same time as [his] service animal." Opp'n ¶ 4.

At approximately 9:00 p.m., Animal Control Supervisor Robin Paul contacted police

---

[1] I refer to *defendants'* motion because both the City and Officer Erler moved for summary judgment. But I previously dismissed Mr. Rose's claims against the City of Fortuna. *See infra* Background, Procedural History. Since he elected not to file an amended complaint, only his claims against Officer Erler remain. I do not address separately the City's arguments that it is also entitled to summary judgment. *See* Mot. for Summ. J. at 12–13 (Dkt. No. 17).

[2] Mr. Rose did not include any evidence with his opposition, but he listed assertions and declared under penalty of perjury that they were true. Opp'n at 4–7 (Dkt. No. 20)(referencing page numbers from ECF system). He based those assertions on his cell phone recording, which defendants attached to the supplemental declaration of William F. Mitchell submitted in support of their reply. *See* Mitchell Supp. Decl., Exs. A ("Video 1") and B ("Video 2"). I will accept the videos, and his assertions as to what those videos show. I will refer to Mr. Rose's assertions by indicating the numbered paragraph from his opposition.

[3] In his opposition, he takes issue with defendants' declarations that repeatedly refer to Sugar as a "pit bull." Opp'n ¶ 5. The United Kennel Club describes the "American Bully" breed as "first and foremost, a companion" with a "gentle and friendly" demeanor, that "makes an excellent family dog." https://www.ukcdogs.com/american-bully.

officer David Erler and requested assistance with "an attendee [that] was refusing her request to remove his pit bull canine from the park."[4] Erler Decl. ¶ 3; *see also* Video 1. At the time, Officer Erler was on foot patrol with Officer Stevens, who advised Officer Erler that approximately thirty minutes prior he had contacted a woman with "a large pit bull" and advised her to remove the dog because no dogs were allowed that day due to the fireworks display. Erler Decl. ¶ 4. The woman indicated that the dog belonged to her son.[5] *Id*.

Officers Stevens and Erler arrived at Mr. Rose's location and found him seated on a blanket holding Sugar on a leash.[6] Erler Decl ¶5; *see also* Video 2. Officer Stevens informed Mr. Rose that Sugar is a "dog" and that signs are posted indicating that dogs are not allowed. Video 2; Erler Decl. ¶ 5. Officer Stevens asked Mr. Rose to "remove the dog out of the park." Video 2; *see also* Erler Decl. ¶ 5. Mr. Rose insisted that Sugar is "not a dog, it's a service animal" and repeatedly requested that Officer Stevens refer to her as such. Video 2; *see also* Erler Decl. ¶ 5; Opp'n ¶ 1. He then indicated that he would "take a ticket" and "take her out" so that he can "fight it in court." Video 2. The two continued to discuss Sugar's status as a service animal; Mr. Rose expressed that he was not refusing to leave but needed to know whether service animals were in fact precluded from the park. Video 2; *see also* Opp'n ¶ 1. At some point, Officer Erler interjected about arguing "semantics" and eventually acceded to Mr. Rose's request and said "get your service animal, get it out, I don't care." Video 2. Mr. Rose responded: "There it is. There it is. That's all I needed." Video 2.

Mr. Rose packed up his belongings and began leaving with Sugar when Officer Erler

---

[4] Mr. Rose begins recording on his cell phone during the conversation with Animal Control Supervisor Robin Paul. Video 1 depicts their initial encounter through the time that she calls for backup and ends while she is waiting for backup to arrive.

[5] Shortly after arriving at the park, Mr. Rose left his service animal with his mother and daughter and drove into town to get food. Rose Dep. at 65:17–66:7; *id*. at 67:20–68:7. He was gone for approximately 20 minutes. Rose Dep. at 75:2. He testified that Sugar is also "an emotional support animal for [his] daughter, so she is either with [him] or her." Rose Dep. at 64:12–13.

[6] Video 2 begins with an exchange between Mr. Rose and Officer Stevens and ends when Officer Erler places Mr. Rose under arrest.

3

appeared to grab Mr. Rose's cell phone.[7] Video 2. He then handed it back and said "Go! Go! Leave!" Video 2. As Mr. Rose was walking out, Officer Erler once again referred to Sugar as a "dog." Video 2; *see also* Erler Decl. ¶ 6. Mr. Rose stopped, reiterated the distinction between a "dog" and a "service animal," and requested to speak to Officer Erler's superior. Video 2; *see also* Erler Decl. ¶ 6. Officer Erler stated, "I'm telling you that's not happening. Right now you need to get the dog out of the park." Video 2. Mr. Rose repeated that he "does not have a dog;" Officer Erler said, "That's a dog," and echoed his command to "get [his] dog out of the park." Video 2. He then grabbed Mr. Rose's arm and announced that he was "going to place [him] under arrest … for disobeying a lawful order." Video 2; *see also* Erler Decl. ¶ 6; Opp'n ¶ 2. Mr. Rose repeatedly asked "why are you handling me" and contended that he was not given a lawful order because Sugar is a service animal. Video 2; *see also* Opp'n ¶¶ 1–2. Officer Erler proceeded to arrest Mr. Rose for obstructing an officer in the performance of his duties in violation of Penal Code § 148(a)(1).[8] Video 2; Erler Decl. ¶7; *see also* Booking Sheet (Mitchell Decl., Ex. C).

Mr. Rose asserts that his wrists were injured because the handcuffs were too tight. Opp'n ¶ 9. He states that he told this to the officer who transported him to the jail, and upon arrival the handcuffs were loosened. Rose Dep. at 108:9–18; Opp'n ¶ 9. He also declares that the encounter "caus[ed] a permanent injury to [his] shoulder." *Id*. He references MRI reports from the hospital and states that the injury requires surgery to correct. *Id*. Rose did not complain to anyone at the jail about his shoulder injury.[9] Rose Dep. at 109:21–110:3. He states that his shoulder began hurting "the next morning when [he] woke up." Rose Dep. at 110:4–6.

## II. PROCEDURAL HISTORY

Rose filed his pro se complaint on February 24, 2017, claiming a violation of his "Civil

---

[7] Officer Erler indicates that he was startled when Mr. Rose "suddenly pushed an object toward [his] face." Erler Decl. ¶5. As a result, he grabbed the object and immediately gave it back. *Id*.

[8] Officer Erler states that he "took hold of one of Rose's arms and place [sic] it behind his back, while Officer Stevens did the same with the other." Erler Decl. ¶ 7.

[9] He did, however, complain about a preexisting back injury that was causing him pain. Rose Dep. at 108:19–109:2. He told the officers that he needed to stand, but they told him he had to sit. *Id*. at 109:4.

4

1  Rights" under 42 U.S.C. § 1983 "alleging excessive force by a police officer during an unlawful

2  arrest." Compl. at 3–4 (Dkt. No. 1). He named "Fortuna Police Department" and "David Erler."

3  Compl. at 2. He states that he sustained an injury to his left shoulder, and he seeks damages of

4  "not less than $150,000." *Id.* at 5–6. The same day he filed a motion for leave to proceed in

5  forma pauperis (Dkt. No. 2), and on March 8 he declined to proceed before a magistrate judge

6  (Dkt. No. 4).

7  On April 7, 2017, I granted Mr. Rose's application to proceed in forma pauperis, and

8  performed an initial review of his complaint under 28 U.S.C. § 1915(e)(2)(B). Order Granting

9  Pl.'s Application to Proceed In Forma Pauperis and Performing Initial Review Under 28 U.S.C. §

10  1915 (Dkt. No. 8). I found that he properly stated a claim for relief against Officer Erler, but

11  dismissed with leave to amend his claim against the City of Fortuna (erroneously named as

12  Fortuna PD) because he did not include any allegations establishing municipal liability under §

13  1983. *Id.* at 3–6. He did not file an amended complaint, so only his claim against Erler remains.

## LEGAL STANDARD

15  Summary judgment on a claim or defense is appropriate "if the movant shows that there is

16  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

17  law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show

18  the absence of a genuine issue of material fact with respect to an essential element of the non-

19  moving party's claim, or to a defense on which the non-moving party will bear the burden of

20  persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

21  made this showing, the burden then shifts to the party opposing summary judgment to identify

22  "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary

23  judgment must then present affirmative evidence from which a jury could return a verdict in that

24  party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

25  On summary judgment, the Court draws all reasonable factual inferences in favor of the

26  non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility

27  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

28  facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony

5

1 does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill*
2 *Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Officer Erler argues that he is entitled to qualified immunity, so Rose's claim against him must fail. *See* Mot. for Summ. J. at 6 ("MSJ")(Dkt. No. 17). Qualified immunity shields state actors from monetary damages unless a plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). While the Supreme Court has made clear that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first[,]" *id.*, it "continue[s] to stress that lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *D.C. v. Wesby*, ___ U.S. ___, 2018 WL 491521, at *10 n.7 (U.S. Jan. 22, 2018).

Under the second prong, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)(internal quotation marks omitted). The Supreme Court has repeatedly—and recently—"reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "clearly established law must be particularized to the facts of the case." *Id*. (internal quotation marks and citation omitted). The appropriate inquiry is "whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he] confronted." *Mullenix*, 136 S. Ct. at 309. "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that 'it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts.'" *Id*. at 308 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001))(alterations omitted).

For purposes of this motion, I will infer that Rose has stated two claims under the Fourth Amendment—one for "unlawful arrest," and the other for "excessive force." *See* Compl. at 4.

6

## I. UNLAWFUL ARREST

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." An arrest is a "seizure" of a "person" and "must be reasonable under the circumstances." *al-Kidd*, 563 U.S. at 735–36. "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Wesby*, ___ U.S. ___, 2018 WL 491521, at *6. "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). A court should "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause[.]" *Id.* Probable cause "is not a high bar[,]" *Kaley v. United States*, 571 U.S. ___, 134 S. Ct. 1090, 1103 (2014), and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Officer Erler arrested Mr. Rose for violating Penal Code § 148(a)(1), which provides that "[e]very person who willfully resists, delays, or obstructs any … peace officer … in the discharge or attempt to discharge any duty of his or her office or employment, shall be [guilty of a misdemeanor]." Cal. Penal Code § 148; *see also Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011). The provision "is often referred to as a statute prohibiting 'resisting arrest,'" but "the statutory prohibition is much broader than merely resisting arrest." *Hooper*, 629 F.3d at 1130. Examining the circumstances in the light most favorable to Mr. Rose and accepting his representation that he was not "resisting arrest," Officer Erler still had probable cause to arrest him for "delay[ing]" Officer Erler's attempts to clear the park of dogs prior to the fireworks display.[10]

---

[10] I use "dog" to refer to Sugar because she is a dog. Her status as a service animal does not negate that fact. As Mr. Rose puts it, "every service animal that is a dog, is a dog." Video 2. His point, that any sign indicating "no dogs allowed" would not apply to service animals under the ADA, *see* Opp'n ¶ 3, goes to a necessary element for a *conviction* under § 148(a)(1)—whether Officer Erler's order was lawful. *See Hooper*, 629 F.3d 1127, 1130 (9th Cir. 2011)("The lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1)."). It does not impact Officer Erler's reasonable belief that Mr. Rose was "willfully resist[ing], delay[ing], or obstruct[ing]" his lawful order, and therefore has no bearing on the probable cause analysis.

7

United States District Court
Northern District of California

Thus, there is no genuine dispute that Officer Erler had probable cause to arrest Mr. Rose for delaying him in the discharge of his duties. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)("[T]he standard of probable cause applies to all arrests, without the need to balance the interests and circumstances involved in particular situations. If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")(internal quotation marks, citation, and alterations omitted).

Even if I found that Officer Erler did not have probable cause to arrest Mr. Rose, he would be entitled to the protections of qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *al-Kidd*, 563 U.S. at 743. It "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Mr. Rose has not identified any case demonstrating that Officer Erler violated clearly established law when he arrested Mr. Rose for seemingly disregarding orders to remove Sugar from the park prior to the fireworks display. *See Holland v. Azevedo*, No. 14-CV-01349-JST, 2016 WL 1754446, at *8 (N.D. Cal. May 3, 2016)("Plaintiff had no constitutional right, much less a clearly established one, to disregard Defendants' lawful orders or to do so without the consequence of arrest under these circumstances."). And Officer Erler was attempting to rid the park of dogs to make it safer for attendees during the fireworks show. Applying qualified immunity under these circumstances strikes the "proper balance between … vindication of constitutional guarantees … [and] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their

---

In addition, Mr. Rose has not asserted a claim under the ADA, and "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA[.]" *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

8

duties." *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1866 (2017).

## II.   EXCESSIVE FORCE

Under the Fourth Amendment, the amount of force used by law enforcement officers must be objectively reasonable when viewed in light of the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). Determining the objective reasonableness of a particular use of force involves a three-step inquiry. *Graham v. Connor*, 490 U.S. 386, 396 (1989). After first assessing the type and amount of force inflicted, the court should determine the government's interests at stake by looking to "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape." *Maxwell v. Cty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012). These factors are non-exhaustive. *Id*.

The final step is to balance the degree of force used against the government interest at stake to determine if the force used was "greater than is reasonable under the circumstance." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. And this determination is "ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997).

In evaluating the "type and amount of force inflicted," Mr. Rose states that Officer Erler "twisted [his] wrist and arm behind [his] back until he put on the overly tightened handcuffs[.]" Opp'n ¶ 2. Officer Erler attests that he performed this move "[i]n accordance with [his] training[.]" Erler Decl. ¶ 7. Mr. Rose indicated that he did not begin to feel pain in his shoulder until the following morning, and he has since learned that his injury requires surgery to correct. Opp'n ¶ 9. But he has not provided any medical records. Mr. Rose's unsupported allegations are insufficient to establish an excessive force claim. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)("Arpin's claim of injury is equally unsupported as she does not provide any medical records to support her claim that she suffered injury as a result of being handcuffed."). Even ignoring this failure suggests that the alleged intrusion was minimal. *See Atwater*, 532 U.S. 354–55 (finding nothing "so extraordinary as to violate the Fourth

Amendment" in "normal custodial arrest," including handcuffing); *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001)(finding "minimal" intrusion of woman who alleged injury during a "normal handcuffing procedure" after she was sprayed with chemical irritant, pushed to the ground, roughly pulled to her feet, and then forced to sit in the car with the windows up in the July heat).

Under the circumstances, it is unnecessary to proceed to the remaining two steps because the de minimis amount of force was objectively reasonable as a matter of law. For completeness, however, I will continue the analysis.

Officer Erler focuses on the "most important *Graham* factor … whether the suspect posed an immediate threat to the safety of the officers or others." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)(internal quotation marks omitted); *see* MSJ at 10 ("The presence of a pit bull in the immediate vicinity of families with children during a firework display posed a serious and immediate threat to other attendees of the Fourth of July event."). The risk posed by Sugar's presence at the event is disputed. Erler attested that his "concern for the safety of other attendees increased" as "the time for the fireworks display was approaching[.]" Erler Decl. ¶ 5. Mr. Rose testified that Sugar had been to a fireworks display before and did not react in any way. Rose Dep. at 85:2–16. But even if Sugar did not pose a risk, it was reasonable for Officer Erler to place the *potential* threat to the public over Mr. Rose's right to be present at the event with his service animal.

Proceeding to the final step, balancing the minimal amount of force against the City's interest in keeping the fireworks celebration safe dictates that the force was not "greater than reasonable under the circumstance." *Santos*, 287 F.3d at 854.

Finding no constitutional violation for excessive force, I need not proceed to determine whether qualified immunity shields Officer Erler from this claim. Suffice it to say, the analysis is the same as described above—there is no clearly established law suggesting that Officer Erler's conduct violated Mr. Rose's statutory or constitutional rights.

**CONCLUSION**

In accordance with the foregoing, Officer Erler's motion for summary judgment is GRANTED. Judgment will be entered in favor of the defendants.

**IT IS SO ORDERED.**

Dated: February 7, 2018

William H. Orrick
United States District Judge